IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

FELISA RIVERO-CRESPO,

**Plaintiff,**

v.

PUERTO RICO DEPARTMENT OF EDUCATION, *et al.,*

**Defendants.**

CIVIL NO. 25-1305 (RAM)

OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is codefendants Commonwealth of Puerto Rico and Puerto Rico Department of Education's (collectively, the "PRDOE" or "Defendant") *Motion to Dismiss Amended Complaint* ("*Motion*"). (Docket No. 27). For the reasons set forth below, the *Motion* is **GRANTED IN PART** and the Court hereby dismisses Plaintiff's claims that are either time-barred, insufficiently pled, or precluded by Eleventh Amendment immunity.

I.    FACTUAL AND PROCEDURAL BACKGROUND

On November 10, 2025, Plaintiff Felisa Rivero-Crespo ("Plaintiff" or "Ms. Rivero-Crespo") filed an *Amended Complaint* against the PRDOE for alleged violations of: (1) Title VII of the Civil Rights Act; (2) Title I of the Americans with Disabilities Act ("ADA"); (3) Section 504 of the Rehabilitation Act; (4) the Age Discrimination in Employment Act ("ADEA"); and (5) Puerto Rico

Law 115. (Docket No. 21 at 2). Plaintiff also argues that she is entitled to economic, emotional, and punitive damages pursuant to Articles 1536 and 1538 of the Puerto Rico Civil Code. Id. at 8.

Plaintiff claims she is from Spain and taught Spanish in the PRDOE for years. On February 16, 2022, she underwent cancer surgery and continued to work after the operation until April 2022, per her physician's instructions. Id. ¶ 14, 16. Plaintiff alleges she returned to work in August 2023 and was placed in a classroom that had an accessible ramp and nearby faculty restrooms, but had a litany of unique issues, namely: it was subject to excessive and continuous ambient noise, oppressive heat, and frequent power outages; and smelled badly. Id. Plaintiff argues that, on October 26, 2023, the PRDOE removed Ms. Rivero-Crespo from her classroom and placed her under precautionary measures ("*medida cautelar*") because a parent filed a restraining order against her after she graded a student with a "C." Id. ¶ 15. Plaintiff posits the order was dismissed and vacated on appeal, but the PRDOE refused to reinstate her to her teaching duties. Id. Plaintiff further argues that Defendant and the school administration favored younger teachers and that she was subject to xenophobic remarks. Id. ¶ 17-18.

Plaintiff avers that, in retaliation for her pursuit of relief for the aforementioned issues, on February 3, 2025, Defendant issued new charges and, subsequently, suspended Ms. Rivero-Crespo.

Id. ¶ 19. Plaintiff maintains her age, national origin, and disability/medical history were motivating factors behind the PRDOE's actions. Id. ¶ 21. Plaintiff posits that she suffered economic loss, emotional distress, and the loss of professional opportunities. Id. ¶ 22.

On December 17, 2025, Defendant filed the present *Motion* arguing: (1) Plaintiff's Title VII national origin and retaliation claims are time-barred because she was late in filing an Equal Employment Opportunity Commission ("EEOC") charge; (2) the discrete acts alleged are not actionable because they are time-barred, and they are not events that created a hostile work environment; (3) even assuming timeliness, Plaintiff failed to state a claim under Title VII; (4) Plaintiff's request for prospective injunctive relief is in fact for retrospective relief, unavailable under the ADA and the ADEA; (5) Plaintiff failed to exhaust administrative remedies by not including her ADA claim in the EEOC charge; (6) Plaintiff failed to identify the medical impairment that affects or limits a major life activity under the ADA; (7) Plaintiff's allegations show Defendant provided reasonable accommodations; and (8) Plaintiff's Law 115 claim is barred by sovereign immunity. (Docket No. 27 at 3).

On January 14, 2026, Plaintiff filed an *Opposition to Premature Motion to Dismiss the Amended Complaint* ("*Opposition*"). (Docket No. 31). In her *Opposition*, Plaintiff alleges that

Defendant's arguments depend on factual disputes which cannot be resolved via a motion to dismiss. Id. at 2. Plaintiff also argues that: (1) she exhausted administrative remedies; (2) the claims are timely because events alleged are not discrete but rather a continuing hostile work environment; (3) Title VII national origin discrimination and retaliation are plausibly pleaded; (4) she adequately pleaded medical or disability condition as a motivating factor for retaliation; and (5) the August 2025 suspension without pay is an ongoing harm which requires prospective relief. Id.

On January 21, 2026, Defendant filed a *Reply*. (Docket No. 32). In it, Defendant maintains that Plaintiff did not respond to its arguments regarding: (1) failing to exhaust administrative remedies as to Plaintiff's ADA claim; (2) how the relief sought is prospective in nature; (3) why Plaintiff's ADEA claim is not barred by Eleventh Amendment immunity; (4) the Section 504 Rehabilitation Act claim; and (5) all state law claims. Defendant asks the Court to consider those arguments waived and rule on those portions of the *Motion* as unopposed. Id. at 4. The PRDOE also reiterates that Plaintiff has not plausibly alleged a hostile work environment, but rather discrete acts that are time-barred. Id. at 6. Finally, Defendant alleges that Plaintiff's Rehabilitation Act claim is time-barred and that her Law 115 claim is barred by sovereign immunity. Id. at 7.

On January 23, 2026, Ms. Rivero-Crespo filed a *Sur-reply*. (Docket No. 37). Plaintiff reiterates that the issue of whether her claims are time-barred as discrete acts or timely as hostile workplace cannot be decided on argument alone and, as such, must survive the present *Motion*. Id. at 2. Plaintiff argues she is entitled to a discovery process and a determination on the merits. Id.

## II.  LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). When ruling on a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "[t]he sole inquiry ... is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 7 (1st Cir. 2011). The Court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Then, the Court takes "the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable

inferences in the pleader's favor," to determine "if they plausibly narrate a claim for relief." Id. (citation omitted). When evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Courts may consider: "(a) 'implications from documents' attached to or fairly 'incorporated into the complaint,' (b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss.'" Schatz, 669 F.3d at 55-56 (quoting Arturet-Vélez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n.2 (1st Cir. 2005)).

### III. DISCUSSION

#### A.    Title VII

Title VII "provides employees with the right to work in an environment free from discrimination because of such employee's race, color, religion, sex, or national origin." Hernández v. Wilkinson, 986 F.3d 98, 102 (1st Cir. 2021) (citing 42 U.S.C. § 2000e-2(a)(1)) (internal quotation marks omitted). "Title VII also protects employees from being discriminated against because the employee has opposed any practice made an unlawful employment practice by this subchapter, or because the employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Id. (quoting 42 U.S.C. § 2000e-3(a)) (internal quotation marks omitted).

Plaintiffs asserting Title VII claims must comply with a host

of procedural requirements. Most notably, under 42 U.S.C. § 2000e-5(e)(1), Title VII plaintiffs must file an administrative charge with the EEOC either 180 or 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). "Because Puerto Rico is a so-called 'deferral' jurisdiction, the administrative charge must be filed within 300 days of the alleged unlawful conduct." Frederique-Alexandre v. Dep't of Nat. & Env't Res. Puerto Rico, 478 F.3d 433, 437 (1st Cir. 2007) (citation omitted). "The charge-filing requirement is mandatory but not jurisdictional; therefore, it is subject to a host of equitable exceptions." Jorge v. Rumsfeld, 404 F.3d 556, 565 (1st Cir. 2005) (citations omitted). However, in deference "to Title VII's carefully crafted temporal limitations," courts in the First Circuit "invoke those exceptions sparingly and interpret them narrowly." Id. "Failure to exhaust this administrative process bars the courthouse door." Aly v. Mohegan Council, Boy Scouts of Am., 711 F.3d 34, 41 (1st Cir. 2013) (internal quotation marks and citation omitted).

Ordinarily, "a plaintiff may not recover for discrete acts of discrimination or retaliation that occur outside the statutory time period." Frederique-Alexandre, 478 F.3d at 437 n.4. However, a party alleging a hostile work environment claim may, in many circumstances, invoke the continuing violation doctrine. This doctrine enables a plaintiff to "obtain recovery for

discriminatory acts that otherwise would be time-barred so long as a related act fell within the limitations period." Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130 (1st Cir. 2009). The First Circuit has described hostile work environment claims "as the classic example of a continuing violation because the actionable wrong consists of an accumulation of individual acts that, taken together, create the environment." Maldonado-Cátala v. Municipality of Naranjito, 876 F.3d 1, 9 (1st Cir. 2017) (internal quotation marks and citation omitted).

To establish a hostile work environment claim, a plaintiff must show (1) she belonged to a protected class (in this context, because of her national origin); (2) she was subjected to unwelcome harassment; (3) the harassment was based on her national origin; (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive work environment; (5) the harassment was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the plaintiff in fact perceived it to be so; and (6) that some basis for employer liability has been established. Stratton v. Bentley Univ., 113 F.4th 25, 50 (1st Cir. 2024) (citing O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001)).

In determining whether multiple acts meet the sufficiently severe or pervasive standard, the court evaluates several factors:

"the severity of the conduct, its frequency, whether it is physically threatening or not, and whether it interfered with the victim's work performance." Zayas-Ortiz v. Becton Dickinson Caribe, Ltd., 968 F. Supp. 2d 463, 473 (D.P.R. 2013) (citing Gerald v. Univ. of Puerto Rico, 707 F.3d 7, 18 (1st Cir.2013)). The court's "role is 'to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment.'" Colon-Fontanez v. Municipality of San Juan, 660 F.3d 17, 44 (1st Cir. 2011) (quoting Noviello v. City of Bos., 398 F.3d 76, 91 (1st Cir. 2005)).

In this case, Plaintiff alleges she filed an EEOC charge on March 5, 2025, that the EEOC issued a *Dismissal and Notice of Rights* on March 26, 2025, and that she filed her original complaint on June 9, 2025. (Docket No. 21 at 4). The EEOC dismissed Plaintiff's charge as untimely. (Docket Nos. 27-1; 27-2).[1] As noted above, to bring a civil action for employment discrimination pursuant to Title VII, an employee must first file an EEOC charge within 300 days of the alleged unlawful employment practice. *See*

---

[1] In support of its *Motion*, the PRDOE attached as an exhibit Plaintiff's charge of discrimination and the corresponding *Dismissal and Notice of Rights*. Although these documents were not incorporated in Plaintiff's *Amended Complaint*, the Court may utilize them in its consideration of a Rule 12(b)(6) motion because it is a public document of which a court may take judicial notice. *See* Chambers v. District of Columbia, 249 F. Supp. 3d 66, 70 n.6 (D.D.C. 2017) ("Where, as here, the defendant alleges a failure to exhaust administrative remedies . . ., the Court, in addition to the pleadings, may consider the plaintiff's charge of discrimination without converting the motion to dismiss because this document is a public document of which a court may take judicial notice." (internal quotation marks and citation omitted)).

Frederique-Alexandre, 478 F.3d at 437. Ms. Rivero-Crespo alleges her charge was timely because she was subject to a hostile work environment. (Docket No. 21 at 4). Defendant contends that, rather than a hostile work environment, Plaintiff alleges a series of discrete, time-barred acts. (Docket No. 27 at 14).

### i.    Hostile Work Environment

The *Amended Complaint* outlines a series of events which Plaintiff maintains created a hostile work environment. Specifically, Plaintiff alleges that the following substantive discriminatory events took place: (1) in August 2023, she was reassigned to a new school and placed in a classroom with accessible accommodations but subject to excessive and continuous ambient noise, oppressive heat, bad smells, and frequent power outages; (2) on October 26, 2023, she was placed under a precautionary measure because a student filed a restraining order against her; and (3) on May 17, 2024, a co-worker made a xenophobic remark. (Docket No. 21). Ms. Rivero-Crespo filed her EEOC charge on March 5, 2025. (Docket No. 27-1). Thus, the Court may only consider events prior to May 9, 2024, the 300-day limitations cutoff, "so long as a related act fell within the limitations period." Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130 (1st Cir. 2009).

Plaintiff has failed to allege how the events described are related to each other, much less how they fit into a hostile work

environment pattern. Ms. Rivero-Crespo's August 2023 placement in a new school and in a classroom with accessible accommodations seems to be related to her leave of absence and recovery from an illness. Plaintiff's October 26, 2023, placement in a precautionary measure was, by her own admission, related to a restraining order filed against her by a student. These events fall outside the 300-day limitations period, and Ms. Rivero-Crespo has altogether failed to show how they plausibly relate either to discriminatory events within the limitations period or to her national origin.

Ms. Rivero-Crespo further alleges that her prolonged precautionary measure, despite the restraining order being dismissed and vacated on appeal, was due to her national origin, and as such, constituted a continuing violation. However, the decision to place Ms. Rivero-Crespo under precautionary measures constitutes a discrete act for which Plaintiff had a 300-day window to file an EEOC charge. *See* Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"); *see also* Miller v. New Hampshire Dept. of Corrections, 296 F.3d 18, 22 (1st Cir. 2002) (Other discrete acts include a letter of warning and a performance

evaluation). Discrete acts differ from hostile environment claims because they are limited to a particular date. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). Here, the precautionary measure was imposed on October 26, 2023, after which Plaintiff had 300 days to file an EEOC charge. The length of the precautionary measure or the dismissal of the restraining order that gave rise to it are inapposite to the timeliness question. Moreover, Plaintiff ties the precautionary measure to her national origin in a conclusory statement which, without more, fails to meet the plausibility standard operative at the pleading stage. Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir.2012) (A complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face."); see also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (A plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Therefore, the Court cannot employ the continuing violation doctrine.

The remaining timely discrimination allegation regarding Plaintiff's national origin is the May 17, 2024, comment by Plaintiff's coworker. However, this discrete act fails the severe and pervasive test and Plaintiff does not plead that it altered the conditions of her employment. Therefore, it could not, by itself, have created a hostile work environment. Consequently, the Court must evaluate if this single incident is grounds for relief

under Title VII.

When asserting a discrimination claim, a plaintiff bears the burden of establishing a prima facie case that: (1) she is a member of a protected class; (2) she possessed the necessary qualifications and adequately performed her job; (3) she suffered an adverse employment action; and (4) similarly situated members outside her protected class were treated more favorably. Perez-Medina v. Yellen, 2022 WL 22956452, at *21 (D.P.R. 2022) (citing Pizarro-Correa v. Puerto Rico Internal Revenue Dep't, 267 F. Supp. 3d 369, 376 (D.P.R. 2017)). While "the prima facie case is not the appropriate benchmark for determining whether a complaint has crossed the plausibility threshold," the elements of a prima facie case are "part of the background against which a plausibility determination should be made." Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 51, 54 (1st Cir. 2013) ("In a nutshell, the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim.").

Here, Plaintiff has plausibly pled that she is a member of a protected class. However, she has failed to adequately plead that she suffered an adverse employment action arising from the singular timely discrimination event alleged—her coworker's remark about hating Spaniards' accents. Title VII does not shield employees from the "ordinary slings and arrows that workers routinely encounter in a hard, cold world." De La Vega v. San Juan Star,

Inc., 377 F.3d 111, 117 (1st Cir. 2004); *see* also <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998) (noting that Title VII does not protect against "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" (quoting Barbara T. Lindemann & David D. Kadue, Sexual Harassment in Employment Law 175 (1992))).

As such, Ms. Rivero-Crespo failed to plausibly plead a hostile work environment claim or a discrimination claim based on her national origin, and thus her substantive Title VII claim is **DISMISSED WITH PREJUDICE.**

### B.    The Eleventh Amendment

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens or another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Am. XI. Even though the Commonwealth of Puerto Rico is not a state, it enjoys the protection of the Eleventh Amendment. *See* <u>Miya Water Projects Netherlands B.V. v. Fin. Oversight & Mgmt. Bd. for Puerto Rico</u>, 138 F.4th 49 (1st Cir. 2025). Administrative arms of the state share this immunity. <u>Vaquería Tres Monjitas, Inc. v. Irizarry</u>, 587 F.3d 464, 477 (1st Cir. 2009). The PRDOE is an arm of the state and is, therefore, protected by Eleventh Amendment

immunity. Rivera-Carrero v. Rey-Hernández, 2006 WL 572349, at *5 (D.P.R. 2006) ("It is firmly established that the Department of Education is an arm of the State").

### i.    The ADA

The ADA forbids employers from terminating a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). It is meant "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." Gray v. Cummings, 917 F.3d 1, 14 (1st Cir. 2019) (quoting 42 U.S.C. § 12101(b)(1)). Title I of the ADA proscribes disability-related discrimination in employment. 42 U.S.C. § 12112. To establish a claim under the ADA, a plaintiff must demonstrate three factors by a preponderance of the evidence: (1) they were disabled within the meaning of the ADA; (2) they were qualified to perform the essential functions of the job, either with or without reasonable accommodation; and (3) the employer took an adverse employment action against them because of their alleged disability. See Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002).

An employee must exhaust administrative remedies before filing an ADA suit in federal court. Franceschi v. U.S. Dep't of Veterans Affairs, 514 F.3d 81, 85 (1st Cir. 2008) ("The Title VII administrative process begins with the filing of an administrative charge before the EEOC."); see also Bonilla v. Muebles J.J.

Alvarez, Inc., 194 F.3d 275, 277 (1st Cir. 1999) (holding that ADA claims must comply with the same administrative procedure requirements as claims under Title VII). The purpose of filing an administrative charge as a prerequisite to commencing a civil action is to promote early conciliation between the parties, as well as to provide prompt notice of the claim to the employer. Gonzalez-Nieves v. Miranda, 264 F. Supp. 3d 357, 361 (D.P.R. 2017) (citing Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996)). "Administrative exhaustion also requires satisfaction of a 'presentment' requirement." Montalvo-Figueroa v. DNA Auto Corp., 414 F. Supp. 3d 213, 229 (D.P.R. 2019). To that end, "[a] Title VII suit may extend as far as, but not beyond, the parameters of the underlying administrative charge." Id. (citing Jorge v. Rumsfeld, 404 F.3d 556, 565 (1st Cir. 2005)). As courts in this District have noted, the First Circuit has inconsistently applied variations of two tests in determining whether a judicial complaint comes within the parameters of an administrative charge. See id. at 236. While the First Circuit has not endorsed a single test by which to conduct this analysis,[2] the Court finds Montalvo-Figueroa's discussion of the common themes that unite the First Circuit's body of case law on this issue helpful. Regardless of

---

[2] The First Circuit has, however, held that "retaliation claims are preserved so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency – e.g., the retaliation is for filing the agency complaint itself." Clockedile v. New Hampshire Dep't of Corr., 245 F.3d 1, 6 (1st Cir. 2001).

the precise test employed, "[n]one of the [First Circuit's] decisions require a judicial complaint precisely to mirror the administrative charge. Rather, the key is that the administrative charge alerts the employer and the EEOC as to the basis of the discrimination claim that the employee first raises in federal court." Id. at 236. Thus, a plaintiff "may raise collateral and alternative bases or acts not within the four corners of the underlying administrative charge" that "bear some close relation to the allegations in the administrative charge[.]" Id. at 237 (internal quotation marks and citations omitted).

The Supreme Court of the United States has established that claims for monetary damages in Federal Court against the State for Title I of the ADA are barred by Eleventh Amendment immunity. Bd. of Trs. of Univ. of Alabama v. Garrett, 531 U.S. 356 (2001). However, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. See Collazo-Rosado v. Univ. of Puerto Rico, 775 F. Supp. 2d 376, 385 (D.P.R. 2011) (citing Ex parte Young, 209 U.S. 123 (1908)). "This standard allows courts to order prospective relief, as well as measures ancillary to appropriate prospective relief." Id. (citing Frew v. Hawkins, 540 U.S. 431, 437 (2004)).

In the Amended Complaint, Plaintiff alleges that Defendant may be found liable under the ADA because Ms. Rivero-Crespo's

illness motivated her suspension. (Docket No. 21 ¶ 25). Importantly, Ms. Rivero-Crespo claims to seek prospective relief as to the ADA claim. Id. ¶ 26. Defendant maintains Ms. Rivero-Crespo's ADA claim should be dismissed because: (1) she seeks retrospective and not prospective relief, which is barred by Eleventh Amendment immunity; (2) she did not adequately plead an illness or disability covered by the ADA; or (3) because she failed to exhaust administrative remedies as to her ADA claim. (Docket No. 27 at 3).

Here, the Court need not explore the merits of the ADA claim nor the nature of Ms. Rivero-Crespo's requested relief because Plaintiff failed to exhaust administrative remedies as to her ADA claim. In Plaintiff's EEOC charge, she alleged that she was subject to discrimination based on age and national origin as well as retaliation. (Docket No. 27-1). Ms. Rivero-Crespo did not check the box for disability, nor did she mention her illness as a motivating factor when she provided the details for the charge. Id. As such, Ms. Rivero-Crespo did not put the Department of Education on alert as to the basis of the discrimination claim that she sought to pursue in federal court—the minimum required in order to exhaust administrative remedies. Velazquez-Ortiz v. Vilsack, 657 F.3d 64 (1st Cir. 2011). Thus, Plaintiff's ADA claim must be **DISMISSED WITHOUT PREJUDICE**.

### ii.  The ADEA

Generally, the ADEA makes it unlawful for an employee to be discharged because of their age. *See* 29 U.S.C.A. § 623(a) ("It shall be unlawful for an employer [...] to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."). Thus, for a claim to arise under this statute, "the plaintiff's **age must have actually played a role in the employer's decision making process and had a determinative influence on the outcome.**" Alicea v. Wilkie, 2020 WL 1547064, at *8 (D.P.R. 2020) (citing Arce v. Aramark Corporation, 239 F.Supp. 2d 153, 159 (D.P.R. 2003) (citations omitted)). Pursuant to said statute, a plaintiff must establish a prima facie case of age discrimination showing that they: (1) were at least forty (40) years old at the time of the alleged adverse employment action; (2) were qualified for the position they held; (3) suffered an adverse employment action; and (4) the employer later filled the position, thereby demonstrating the continuing need for those services. *See* Alicea, 2020 WL 1547064, at *9 (citation omitted). The Supreme Court has held that for a plaintiff to prevail in a lawsuit under the ADEA, they "must prove that age was the **'but-for'** cause of the employer's adverse decision." Gross v. FBL Financial Services, Inc., 557 U.S. 167, 176 (2009) (emphasis added). Hence, they must prove through a preponderance of the

evidence that age "must have been the determinative factor as opposed to merely a motivating factor in the employer's decision." Rivera-Cruz v. Hewitt Assocs. Caribe, Inc., 2018 WL 1704473, at *6 (D.P.R. 2018) (citation omitted).

The Supreme Court has held that the ADEA did not validly abrogate states' Eleventh Amendment immunity from suit by private individuals. Kimel v. Fla. Bd. of Regents, 528 U.S. 62 (2000). The Eleventh Amendment, however, does not confer upon the states a total immunity against suit. Alden v. Maine, 527 U.S. 706, 755 (1999). The Eleventh Amendment does not prevent individuals from obtaining injunctive relief against a state based upon the ADEA pursuant to Ex parte Young. 209 U.S. 123 (1908).

Plaintiff posits that Defendant can be held liable for ADEA claims because she was over forty (40) years old when she was suspended from her job at the Department of Education. (Docket No. 21 ¶ 28). Ms. Rivero-Crespo avers she was treated less favorably than younger teachers, when taking into account the retention/hiring of younger comparators, the prolonged precautionary measure, and suspension. Id. Plaintiff maintains she seeks prospective relief including her reinstatement. Id. Defendant alleges Plaintiff's request for prospective injunctive relief is in fact retrospective, rendering it unavailable under the ADEA. (Docket No. 27 at 3).

Plaintiff has failed to adequately allege how the

discriminatory events outlined in her *Amended Complaint* are related to her age, much less that her age was their "but-for" cause. Ms. Rivero-Crespo's August 2023 placement in a new school and in a classroom with accessible accommodations seems to have been related to her leave of absence and recovery from an illness. Plaintiff's October 26, 2023, placement in a precautionary measure was, by her own admission, related to a restraining order filed against her by a student. The xenophobic remark allegation regards Plaintiff's national origin and has no relation to her age discrimination claims.

Ms. Rivero-Crespo attempts to tie her prolonged placement in a precautionary measure, despite the restraining order being vacated on appeal, to her age and/or national origin. She seeks injunctive relief to be reinstated to her teaching duties. However, Plaintiff does little more than mention that younger teachers were favored while she remained in a precautionary measure. Specifically, Ms. Rivero-Crespo states the PRDOE "favored younger teachers, including by retaining/hiring younger, less-experienced teachers while leaving Plaintiff in *medida cautelar*, and by failing to correct deficient classroom conditions reported by her to the administration of the school." (Docket No. 27 at 5). This alone is merely conclusory and fails the plausibility standard operative at the pleading stage. Grajales, 682 F.3d at 44 (A complaint "must contain sufficient factual matter to state a claim to relief that

is plausible on its face."); *see also* Iqbal, 556 U.S. 662 (A plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Therefore, Plaintiff's ADEA claims against Defendant are **DISMISSED WITH PREJUDICE**.

### iii. Law 115

In addition to the federal claims, Plaintiff brings forth a state-law claim under Puerto Rico Law 115 of December 20, 1991, P.R. Laws Ann. tit 29, § 194(a). Law 115 prohibits employers from retaliating against employees for engaging in protected activities. P.R. Laws Ann. tit. 29 § 194a(a). *See* Salva v. Eagle Global Logistics, 2006 WL 2685109, at *4 (D.P.R. 2006). To prevail under this statute, "the employee must demonstrate that she engaged in a protected activity under Law 115 and that she was subsequently discharged, threatened or discriminated against regarding her employment." Salva, 2006 WL 2685109, at *4. "Title VII and Law 115 are largely symmetrical in scope." Vélez v. Janssen Ortho, LLC, 467 F.3d 802, 809 (1st Cir. 2006) (following the same Title VII prima facie pleading requirements). Defendant alleges that Plaintiff's Law 115 claim is precluded by sovereign immunity. Plaintiff did not respond to Defendant's argument.

The Supreme Court has held that neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89,

121 (1984). Courts in this district have found that sovereign immunity shields the Commonwealth and its instrumentalities from Law 115 claims in federal court. *See* Diaz v. Dep't of Educ., 823 F. Supp. 2d 68 (D.P.R. 2011) ("Law 115 claim may not proceed because the Commonwealth has not waived its sovereign immunity."); Pizarro-Correa, 267 F. Supp. 3d at 376; Ramos-Santos v. Hernández-Nogueras, 867 F.Supp.2d 235, 259 (D.P.R. 2012). Consequently, Plaintiff's Law 115 claims are **DISMISSED WITHOUT PREJUDICE**.

**C.    Section 504 of the Rehabilitation Act**

Section 504 of the Rehabilitation Act of 1973 provides that: "[n]o otherwise qualified individual with a disability [...] shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). To prevail on a § 504 claim, a plaintiff must prove: (1) that she is disabled; (2) that she sought services from a federally funded entity; (3) that she was "otherwise qualified" to receive those services; and (4) that she was denied those services "solely by reason of her ... disability." Lesley v. Hee Man Chie, 250 F.3d 47, 52 (1st Cir. 2001). The PRDOE does not dispute that it is the recipient of federal funding and that it was so at all times relevant to this case. Therefore, the PRDOE has waived its immunity by accepting federal funds. *See* Nieves-Marquez v. Puerto Rico, 353 F.3d 108

(1st Cir. 2003) (finding that "Puerto Rico has clearly waived its Eleventh Amendment immunity under Section 504"); Arecibo Cmty. Health Care, Inc. v. Puerto Rico, 270 F.3d 17, 24–25 (1st Cir. 2001).

The Rehabilitation Act does not establish a limitations period. Toledo-Colon v. Puerto Rico, 812 F. Supp. 2d 110 (D.P.R. 2011) (citing Vargas Alicea v. Consortium of Mayaguez/Las Marias, 360 F.Supp.2d 367, 370 (D.P.R.2005)). Therefore, courts apply either the state's personal injury statute or the state's analogous disability discrimination statute. Id. (citing Skidmore v. Am. Airlines, Inc., 198 F.Supp.2d 131, 135 (D.P.R. 2002) (citations omitted)). Personal injury actions in Puerto Rico are brought pursuant to Article 1536 of the Puerto Rico Civil Code. P.R. Laws Ann. tit. 31, §10801; see Gonzalez-Ortiz v. Puerto Rico Aqueduct & Sewer Auth., 2024 WL 3759659 (D.P.R. 2024), reconsideration denied, 2024 WL 4601460 (D.P.R. 2024). Article 1204 of the Puerto Rico Civil Code proscribes a one-year limitations period for these actions. P.R. Laws Ann. tit. 31, §9496(a); see Gonzalez-Ortiz, 2024 WL 3759659 at *10. Law 44 is Puerto Rico's local disability discrimination statute, and like Article 1536, it has a one-year limitations period. Puerto Rico Law 44 of July 2, 1985, P.R. Laws Ann. tit. 1, §§ 501 et seq.; see Toledo-Colon, 812 F. Supp. 2d at 119. Federal law determines the date on which the claim accrued. Rivera–Muriente v. Agosto–

Alicea, 959 F.2d 349, 353 (1st Cir. 1992). "Under federal law, the limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis for his claim." Rodriguez-Garcia v. Municipality of Caguas, 354 F.3d 91 (1st Cir. 2004) (citations and quotation marks omitted).

Here, Plaintiff argues she underwent cancer surgery on February 16, 2022, and that she continued to work after the operation until April 2022, as per her physician's instructions. (Docket No. 21 at ¶ 14, 16). Plaintiff maintains that she returned to work on August 2023 and was placed in a classroom that had an accessible ramp and nearby faculty restrooms, but had a litany of issues that were unique to her classroom, namely: it was subject to excessive and continuous ambient noise, oppressive heat, and frequent power outages; and smelled badly. Id. Defendant alleges that Plaintiff's Section 504 claim is time-barred. (Docket No. 27 at 22). Crucially, Plaintiff does not respond to Defendant's Section 504 timeliness arguments in her *Response* or *Sur-reply*. (Docket Nos. 31 and 37, respectively).

The Court need not address the merits of the Section 504 claim because it is, in fact, time-barred. All of Plaintiff's arguments regarding a hostile work environment involve her placement in a prolonged precautionary measure and claims of age and national origin discrimination. She does not allege disability as a motivating factor for any of the Department of Education's actions

after August 2023—when she returned to work after her illness and, by her own admission, was placed in a classroom with accommodations such as an accessible ramp. (Docket No. 21 at ¶ 16). Any subsequent mentions of her health as a motivator for discrimination are made in passing, and in a conclusory fashion. Therefore, Plaintiff had one year after August 2023, the date of the final discrete act related to her disability, to pursue a claim under Section 504. She did not do so. Hence, Plaintiff's Section 504 claims against Defendant are untimely and **DISMISSED WITH PREJUDICE**.

   **D.   Supplemental State-Law Claims**

   In addition to the claims discussed above, Plaintiffs seek economic, emotional, and punitive damages pursuant to Articles 1536 and 1538 of the Puerto Rico Civil Code, P.R. Laws Ann. tit 31, §§ 10801 and 10803. (Docket No. 21 at 2).

   Article 1536[3] is Puerto Rico's general tort statute, and states that a person who "through fault or negligence, causes damage to another, is obliged to repair it." P.R. Laws Ann. tit. 31, § 10801; *see, e.g.*, Rivera-Lopez, 2025 WL 3653805 at *4. To succeed on an Article 1536 tort claim, the plaintiff must demonstrate "(1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty

---

[3] The Puerto Rico Civil Code was amended in 2020; Articles 1536 and 1540 were previously titled Articles 1802 and 1803, respectively. *See* González-Ortíz v. Puerto Rico Aqueduct & Sewer Auth., 2024 WL 3759659, at *10 (D.P.R. 2024).

element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause)." Gonzalez-Caban v. JR Seafood Inc., 48 F.4th 10, 14 (1st Cir. 2022) (quoting Vázquez-Filippetti v. Banco Popular de P.R., 504 F.3d 43, 49 (1st Cir. 2007)).

Article 1538 allows for the imposition of punitive damages "whenever the act or omission constitutes a crime, is committed intentionally or with serious disregard for the life, safety, and property of others." P.R. Laws Ann. tit. 31, § 10801; see, e.g., Rodriguez Perez v. Abreu Garcia, 2024 WL 808654, at *6 (D.P.R. 2024).

This District has repeatedly held that "provisions of the Puerto Rico Civil Code are supplementary to special legislation like Title VII, and that a special law prevails over a general law." Orellano-Laureano v. Instituto Medico del Norte, Inc., 2023 WL 4532418, at *6 (D.P.R. 2023) (citation omitted); Torres-Figueroa v. Televicentro of Puerto Rico, LLC, 2024 WL 4769756, at *2 (D.P.R. 2024) (explaining that "laws such as Title VII [and local Puerto Rico laws] are special laws" and so supplant Article 1536). Tort claims under Articles 1536 and 1538 are to be dismissed when they are entirely duplicative. See Santana-Colon v. Houghton Mifflin Harcout Pub. Co., 81 F. Supp. 3d 129, 140 (D.P.R. 2014). The Puerto Rico Supreme Court and courts in this District have held that, "to the extent that a specific labor or employment law

covers the conduct for which a plaintiff seeks damages, he is barred from using the same conduct to also bring a claim under Article [1536]."[4] Id.

As Plaintiff's own *Amended Complaint* confirms, her Article 1536 and Article 1538 claims seek additional avenues of relief for the same nucleus of facts concerning PRDOE's alleged discrimination and retaliation against Plaintiff. (Docket No. 21). Plaintiff does not allege conduct that differs from the conduct with which she pleads her claims based on Title VII, the ADA, the ADEA, the Rehabilitation Act and Puerto Rico Law 115. Id.

That overlap is dispositive; it requires the dismissal of Plaintiff's Article 1536 and Article 1538 claims. This District has repeatedly held that "provisions of the Puerto Rico Civil Code are supplementary to special legislation like Title VII, and that a special law prevails over a general law." Orellano-Laureano, 2023 WL 4532418 at *6 (internal citation omitted); Televicentro of Puerto Rico, 2024 WL 4769756 at *2. Here, Plaintiff expressly invokes the Puerto Rico Civil Code general tort framework. (Docket No. 21 at 8). These claims do not identify any distinctly tortious act, duty, or injury independent of the alleged discrimination and retaliation Plaintiff challenges through her other claims. Id. For these reasons, Plaintiff's Article 1536 and Article 1538 claims

---

[4] The Santana-Colon case referred to the former Article 1802. *See supra* note 1; 81 F. Supp. 3d at 140.

are hereby **DISMISSED WITH PREJUDICE.**

### E. Title VII Retaliation

Title VII protects from retaliation for two distinct varieties of activity—opposition and participation conduct. Ray v. Ropes & Gray LLP, 799 F.3d 99, 107-108 (1st Cir. 2015) (citing 42 U.S.C. § 2000e-3(a)). The opposition clause prohibits employers from retaliating against a person who "has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e–3(a). Protected opposition activity includes responding to an employer's inquiries about inappropriate behavior, writing letters protesting an employer's allegedly unlawful actions, or picketing and boycotting an employer. Ray, 799 F.3d at 107-108 (1st Cir. 2015) (collecting cases); *see also* García-Colón v. State Insurance Fund Corp., 2024 WL 1886386 (D.P.R. 2024) (citing John F. Buckley IV & Michael R. Lindsay, Defense of Equal Employment Claims, § 8A:3, Westlaw). On the other hand, participation activity refers to an employee's involvement in an "investigation, proceeding, or hearing" under Title VII, such as a lawsuit or EEOC complaint. García-Colón, 2024 WL 1886386 (citations omitted). An adverse employment action is one that affects employment or alters the conditions of the workplace and typically involves discrete changes in the terms of employment such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing significant change in

benefits." Morales-Vallellanes v. Potter, 605 F. 3d 27, 35 (1st Cir. 2010).

In addition to the Title VII substantive claims, Plaintiff advances a Title VII retaliation claim. (Docket No. 21 at 6). Plaintiff alleges she complained internally, including in a May 17, 2024, email, and engaged in protected activity through her union in early 2025. Id. Plaintiff also argues that, in retaliation for her protected activity, on February 3, 2025, Defendants presented charges against her, and, on February 10, 2025, the PRDOE suspended her with pay. Id. All of which culminated in a one-year suspension without pay. Id. Defendants also seek to dismiss this claim and argue these allegations fail to state a plausible retaliation claim under Title VII and that the Department of Education had legitimate, non-retaliatory reasons for suspending Plaintiff. (Docket No. 27 at 19). However, at this stage in the proceedings, Plaintiff has plausibly pled the Title VII retaliation claim.

As a threshold matter, there is no question that Ms. Rivero-Crespo's act of filing EEOC charge constitutes protected participation activity. See García-Colón, 2024 WL 1886386; see also 42 U.S.C. § 2000e-3(a) ("It shall be unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge . . . under this subchapter."). Ms. Rivero-Crespo also engaged in protected

opposition activity when she emailed her superiors and complained about her coworker's remark about her accent.

While there is a wide temporal gap between the email Plaintiff sent on May 17, 2024, and her February 10, 2025, suspension, "temporal proximity" is merely one factor relevant to causation and usually relevant later in the proceedings. Garayalde-Rijos v. Municipality of Carolina, 747 F.3d 15 (1st Cir. 2014). In fact, drawing all reasonable inferences in the Ms. Rivero-Crespo's favor, there is no such temporal gap between Plaintiff's union related activity in early 2025 and her February 10, 2025, suspension. Moreover, Plaintiff's filing of the EEOC charge on March 5, 2025, is also not so far removed from her one-year suspension without pay in August 2025.

As such, Ms. Rivero-Crespo has plausibly plead a retaliation claim.

## IV. CONCLUSION

For reasons set forth above, the Court **GRANTS** codefendants' *Motion to Dismiss* (Docket No. 27) **IN PART,** dismissing with prejudice Plaintiff's Title VII national origin discrimination, ADEA, Rehabilitation Act and Puerto Rico Civil Code claims, and dismissing without prejudice Plaintiff's ADA and Law 115 claims. The Court **DENIES** codefendant's *Motion* as to Plaintiff's Title VII retaliation claim.

**IT IS SO ORDERED.**

Civil No. 25-1305 (RAM)                                            32

In San Juan, Puerto Rico, this 29th day of May 2026.

                              S/ RAÚL M. ARIAS-MARXUACH
                              United States District Judge